J-A04045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :

           v.                                :
                                          :
                                          :

REGINALD BRYANT                 :
                                          :

           Appellant             :      No. 3371 EDA 2019

Appeal from the PCRA Order Entered September 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1206841-1997,
CP-51-CR-1206851-1997

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED JULY 30, 2021**

Reginald Bryant (Bryant) appeals the order of the Court of Common Pleas of Philadelphia County (PCRA court) denying his petition for post-conviction relief filed on February 28, 2019.[1]  In our prior memorandum decision in this case affirming the trial court's order, we addressed the only issue initially briefed on appeal – whether a new ballistics report constituted a meritorious post-conviction claim of after-discovered evidence.

Thereafter, Bryant's newly retained appellate counsel moved for reconsideration so that we could evaluate two other after-discovered evidence

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Relief was sought pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.

claims that were denied by the PCRA court and raised in supplemental briefing. These two additional claims concerned the discovery of misconduct by a detective assigned to his case and a witness statement purporting to exonerate Bryant. We granted reconsideration so that we could address the two additional claims. To that end, this decision replaces our prior memorandum,[2] which has been withdrawn. For the reasons that follow, we affirm the order on review.

**I.**

Bryant was convicted of first-degree murder, third-degree murder and other related offenses in 2001 following a jury trial.[3] He was sentenced to a prison term of life as to the first-degree murder count and an aggregate term of 17.5 to 35 years on the remaining offenses. The facts adduced at the trial were summarized by this Court as follows:

> In the summer of 1997 [Bryant and his co-defendant Lamont Taylor] were dealing drugs in the one hundred block of North 62nd Street in West Philadelphia. Leonard Wright (aka "Patrick") moved into their territory and began selling drugs out of Allen Gibson and Madeline Carter's residence on 121 North 62" Street. On July 25, 1997, Taylor entered this house with a gun strapped to his waist and threatened Carter with harm if she did not stop selling drugs. She screamed to the neighbors that Taylor was there and that if she was killed, he was the perpetrator.

---

[2] This initial memorandum decision was issued on May 13, 2021.

[3] We decide this appeal in conjunction with Bryant's related matter at appellate docket number 3370 EDA 2019, which arises from the same underlying facts and legal issues.

Several hours later, Taylor returned to the house with [Bryant] in order to prevent Patrick, Gibson, and Carter from moving in on their drug operation. Upon entering the house, they demanded to see Patrick, who eventually came downstairs to talk with them. He and [Bryant and Taylor] got into a heated argument over his right to sell drugs in the neighborhood. [Bryant] told Taylor to "bust him" (kill him), and both [Bryant and Taylor] began shooting at Patrick. Gibson immediately shielded Carter until they could safely duck behind a living room sofa. Patrick returned fire, but sustained a gunshot wound to his chest. [Either Bryant or Taylor's] bullets also struck and killed Charles Sipes, a friend of Gibson and Carter who was visiting at the time.

[Bryant and Taylor] fled the scene and sped off in a white Lexus owned by [Bryant's] sister. Patrick told Gibson to hide his gun in the basement, and then he staggered off the front porch in time to see [Bryant and Taylor] enter the car and drive off. He told police that two black men shot him and drove off in the "white Lexus." Katrese Watts, a neighbor, confirmed Patrick's statement and identified [Bryant and Taylor] as the men who forcibly entered the house before gunfire erupted.

On August 3, 1997, just a week after the shooting, Carter told a homicide detective that ... Taylor had threatened her earlier in the day on July 25th and that both [Bryant and Taylor] later shot Sipes and Patrick. She told the detective that she was afraid [Bryant and Taylor] would retaliate against her for talking to the police. Carter did not return home until approximately 3 a.m. the following morning. Gibson was still awake and accompanied her into the kitchen. About five to ten minutes later, someone knocked on the door and Carter went to answer it. [Bryant and Taylor] pushed their way into the house, knocked [Carter] down, and then shot her in the chest. They proceeded to pour gasoline over her paralyzed body and light her and the entire house on fire.

Taylor turned himself into police, and [Bryant] was arrested at his residence on September 23, 1997. A search of [Bryant's] residence yielded the key to a safe containing a loaded .40 caliber Smith and Wesson handgun, a large quantity of heroin, and $2,200.

*Commonwealth v. Bryant*, 1151 EDA 2001 (Pa. Super. Sept. 13, 2002)

(unpublished memorandum) (affirming judgment of sentence).

- 3 -

Bryant was charged with the murders of Sipes and Carter, but the ballistics expert who testified at trial could not link those shootings with the weapon found in Bryant's home. The jury found Bryant guilty of first-degree murder, third-degree murder, arson, aggravated assault, conspiracy and possession of an instrument of crime. Bryant appealed and this Court affirmed the judgment of sentence. *See id*.

Bryant's first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, was denied in 2015 and this Court affirmed the denial in **Commonwealth v. Bryant**, 2455 EDA 2015 (Pa. Super. Dec. 2, 2016) (unpublished memorandum). **See also Commonwealth v. Bryant**, 9 EAL 2017 (Pa. May 31, 2017) (denying petition for allowance of appeal).

While that previous appeal was still pending, Bryant filed a *pro se* PCRA petition on January 25, 2017. He claimed that a new statement by Shara Stokes-Slusher, given to Bryant's private investigator on December 16, 2016, made him eligible for PCRA relief. In her statement, Stokes-Slusher claimed that on September 12, 2015, her husband, David Slusher, had alluded to being responsible for an incident leading to the life sentence of a person named "Yak," which is presumably a nickname for Bryant. The *pro se* petition was dismissed due to the pendency of the above appeals and the dismissal was without prejudice.

On March 30, 2018, Bryant moved to retest the .40 caliber firearm found in his safe, as well as projectiles and cartridge casings found at the scenes of

the subject incidents. The motion was granted, and the ballistics expert retained by Bryant concluded that the weapon recovered from his safe was not used to murder Sipes or Carter. The Commonwealth did its own ballistics analysis and agreed that the weapon taken from Bryant's safe was not used to shoot either victim.

In an amended supplemental PCRA petition filed on February 28, 2019, Bryant contended that the new ballistics evidence entitled him to a new trial. Additionally, Bryant claimed that a new trial was warranted based on newly-discovered police misconduct. He argued that Detective Frank Jastrzembski, who was involved in Bryant's trial, had been implicated in the civil suit of another defendant who was exonerated due to the detective's illegal tactics.

In that unrelated matter, **Wright v. City of Philadelphia**, 229 F. Supp. 3d 322 (E.D. Pa. 2017), Detective Jastrzembski withheld exculpatory evidence and fabricated the evidence that had contributed to the defendant's convictions. Subsequent DNA testing also proved the defendant's innocence, leading to the judgment of sentence being vacated. However, unlike the defendant in **Wright**, Bryant did not specify how any misconduct on the part of Detective Jastrzembski resulted in his own convictions in the present case.

As his third and final claim in his supplemental amended PCRA petition, Bryant reiterated that the new statement of Stokes-Slusher was exonerating after-discovered evidence, making him eligible for PCRA relief. In the handwritten statement, Stokes-Slusher gave minimal details about the

circumstances of the incident, conveying only that David Slusher had taken responsibility for a serious crime and was afraid that "Yak" was trying to have him murdered in retaliation for the life sentence he had received. According to Bryant, David Slusher confessed to his wife that he murdered Carter in 1997.

The PCRA court sent timely notice to Bryant that it would be finding that his supplemental amended PCRA petition lacked merit. **See** Pa.R.Crim.P. 907. Bryant responded to the notice and the petition was summarily denied. A timely notice of appeal was filed[4] and Bryant was not directed to submit a 1925(b) statement of issues complained of on appeal. The PCRA court issued a 1925(a) opinion outlining why the denial of Bryant's PCRA petition should be affirmed. **See** 1925(a) Opinion, 4/21/2020, at 6-10.

As to Bryant's claim concerning the ballistics report, the PCRA court found it had no merit because its admission at trial would not have reasonably led to a different verdict. At trial, the Commonwealth presented no direct evidence that the .40 caliber weapon seized from Bryant's house was used to kill either of the victims. Rather, a ballistics expert only testified that the

---

[4] Bryant filed two notices of appeal, each of which were captioned with two related case numbers that appear on the PCRA court's order denying relief. These notices comported with Pa.R.A.P. 341. **See generally Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (*en banc* decision holding that identical notices of appeal with multiple docket numbers are sufficient as long as a separate notice is filed at each docket number).

weapon could not definitely be excluded as the murder weapon. More importantly, the PCRA court found that the new ballistics report would not have diminished the weight of the substantial evidence linking Bryant to the two murders, including the testimony of several eyewitnesses.

The PCRA court next found that the after-discovered evidence claim of misconduct by an investigating detective was both untimely and without merit because Bryant had not sufficiently developed the issue or stated when he learned of the **Wright** case, which was decided over two years prior to the supplemental amended PCRA petition Bryant filed on February 28, 2019. **Id**. at 10-12.

Similarly, the PCRA court found that the statement of Stokes-Slusher did not satisfy an exception to the PCRA's jurisdictional time-bar or establish a substantive basis for PCRA relief. **Id**. at 12-13. Although Bryant made this claim within 60 days of receiving the written statement, he did not "provide any argument or evidence demonstrating that he could not have learned of this 'newly discovered fact' earlier through the exercise of due diligence." **Id**. Moreover, the PCRA court reasoned that even if Bryant's claim was timely, it would not warrant PCRA relief because the statement was hearsay and its inadmissibility would have prevented it from having any impact on the outcome of the trial. **Id**. at 13.

In his supplemental appellate brief, Bryant now raises three issues:

1. Whether the [PCRA] court erred in denying the [PCRA] Petition despite the discovery of new ballistics evidence which proves that

the gun recovered from the search of [Bryant's] house could not have been the murder weapon.

2. Whether the [PCRA] court erred in denying the [PCRA] Petition without an evidentiary hearing where a witness recently came forward and would have testified that her husband admitted to committing the murders.

3. Whether the [PCRA] court erred in denying the [PCRA] Petition where newly-discovered evidence of police corruption would have shown that [Bryant] did not receive a fair trial.

Appellant's Supplemental Brief, at vi (issues renumbered, suggested answers omitted).

## II.

A PCRA petition must be filed within one year from the date that the judgment of sentence became final and this deadline is "mandatory and jurisdictional in nature[.]" ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013) (citing 42 Pa.C.S. § 9545(b)). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." ***Hernandez***, 79 A.3d at 651; ***see also*** U.S.Sup.Ct.Rule 13.1 (allowing 90 days for the filing of a writ of certiorari in the Supreme Court of the United States). The PCRA enumerates three exceptions to it jurisdictional time-bar:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

**(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence**; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii) (emphasis added).

These three timeliness exceptions, including the "newly-discovered fact" exception in subsection 9545(b)(1)(ii), are distinct from the substantive grounds for PCRA relief enumerated in 42 Pa.C.S. § 9543. Specifically, for claims of "after-discovered evidence," as defined in subsection 9543(a)(2)(vi), a petitioner must prove that the new evidence:

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

***Commonwealth v. Randolph***, 873 A.2d 1277, 1283 (Pa. 2005) (quoting

***Commonwealth v. McCracken***, 659 A.2d 541, 545 (Pa. 1995)).

Furthermore, the petitioner must file such a claim within 60 days from the date that it could have been presented with the exercise of reasonable (or due) diligence. ***See*** 42 Pa.C.S. § 9545(b)(2).[5] Due diligence requires a

---

[5] On October 24, 2018, the General Assembly amended Section 9545(b)(2), extending the time for filing a PCRA claim from 60 days to one year from the date a claim could have been presented. ***See*** 2018 Pa. Legis. Serv. Act 2018-
*(Footnote Continued Next Page)*

petitioner to take reasonable steps to protect his interests and to explain why he could not have learned of the new evidence earlier. ***See Commonwealth v. Brensinger***, 218 A.3d 440, 448-49 (Pa. Super. 2019). If any of the four elements of an after-discovered evidence claim cannot be established, then the claim must be denied. ***See Commonwealth v. Pagan***, 950 A.2d 270, 292-93 (Pa. 2008).[6]

## III.

## A.

Bryant's first after-discovered evidence claim concerning the ballistics report is time-barred.[7] His trial was in 2001 and his judgment of sentence became final in 2003. He had roughly until the end of 2004 to petition for PCRA relief, but he did not move for further ballistics testing until eight years later, in 2012. That motion was apparently never decided and Bryant did not

---

146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter. In the present case, all of Bryant's claims of newly-discovered facts arose before the effective date of the amendment, so in order to satisfy this exception to the PCRA's time-bar, he had to file his claims within 60 days from the date each of his claims could have been presented.

[6] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." ***Commonwealth v. Weimer***, 167 A.3d 78, 81 (Pa. Super. 2017).

[7] The PCRA court found that this claim was timely, but this Court is not bound by that legal conclusion, which we review *de novo*. ***See Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) ("[W]ith regard to a court's legal conclusions, we apply a de novo standard.").

- 10 -

resume his efforts to obtain further ballistics testing until 2018, at which point the renewed request was granted.

Bryant has given no sound explanation for why he could not seek, much less obtain, this evidence in time for his trial. Although his motion for testing filed in 2012 was not formally ruled upon, it was still filed eight years after his conviction, and it was incumbent on Bryant to demonstrate that he was reasonably diligent in pursuing further testing at all relevant times. He has not done so and, thus, the claim is both waived and barred as untimely. ***See*** 42 Pa.C.S. § 9545(b)(1)(ii).

Even if Bryant could satisfy an exception to the PCRA's jurisdictional time-bar, no relief would be due because the ballistics report is not reasonably likely to have affected the outcome of his trial. Numerous witnesses identified Bryant as one of the perpetrators who shot the two decedents. No direct evidence was introduced at trial establishing that Bryant's .40 caliber firearm was the weapon used in the shootings, and the jury was informed that it was only *possibly* the murder weapon. The ballistics report showing that Bryant's .40 caliber firearm did not match the murder weapon does not exculpate Bryant or otherwise undermine the incriminating evidence admitted at trial. Thus, the PCRA court did not err in denying the claim.

**B.**

Bryant next contends that the PCRA court erred in summarily denying his claim of after-discovered evidence as to the written statement of Stokes-

- 11 -

Slusher. The PCRA court did not err in denying this claim because Bryant has not explained why he could not have raised it earlier, as he makes only vague reference to how he learned of David Slusher's purported confession and involvement in Carter's murder. The statement of his wife, Stokes-Slusher, reads:

> We attended a neighborhood reunion in Southwest Philadelphia on September 12, 2015. Later that night, after returning home, my husband, David Slusher . . . as we were getting ready for bed, as he lay in bed he said Maw Maw. I said "Who[?]" He said Yak, I said, "What about Yak"? He said, "Nobody told him to come there," I said, "Come where"? He said, "I was already in there and did what I had to do." He then said, "When Yak was coming on the porch I already did what I had to and was coming out." He then said, "I asked Yak what was he doing here?" He said he (David) "left off the porch, I got out of there." He explained that he was leaving and wondering why Yak was there. He explained that he was leaving because he did what he had to. He also stated that, "Yak was in the wrong place at the wrong time." Yak was arrested at that time. [David] didn't say much more about it. He did express how close he and Yak was, their relationship and their history.
>
> (The following questions were formulated by the client, Reginald Bryant, and asked by the investigator).
>
> 1. Is it true that David and Yak was best friends?
>
> A. Yes.
>
> 2. Did David ever suspect that Yak was trying to put the case on him?
>
> A. No.
>
> 3. Did David separate his communication with Yak and his family because he thought that Yak was trying to do something to him?

- 12 -

> A. Yes, because he (David) thought that he (Yak) was trying to kill him or have a hit out on him and wanted him (David) to take his (Yak's place) doing the life bid.

Supplemental Amended PCRA Petition, 2/28/2019, Exhibit C, pp. 1-3.

The content of the statement itself demonstrates that Bryant's claim is untimely and without arguable merit. Even assuming that the statement refers to the murder of Carter and that the person identified as "Yak" refers to Bryant, the statement would still show that Bryant knew at the time of Carter's murder – in 1997 – that David Slusher was not only present at the scene but also responsible for the crime.

Neither in his petition nor in his briefing has Bryant given a reason why he never previously discovered the purported fact that David Slusher murdered Carter or, at the very least, that he was present at the scene moments before she was fatally shot and her house was burned down. David Slusher's name was never even uttered at Bryant's trial or in his previous PCRA proceedings. His sudden emergence as a perpetrator is simply not credible.

The claim also appears to be procedurally barred due to untimeliness. Stokes-Slusher stated that she spoke with her husband about the incident on September 12, 2015. Bryant claimed that later she reached out to his mother about having information on his case. Stokes-Slusher did not speak with an investigator until December 6, 2016. In his supplemental amended PCRA petition, Bryant did not specify the dates on which he first learned of the new

- 13 -

evidence and filed the claim, making it not only meritless as discussed above but also untimely. *See Commonwealth v. Davis*, 86 A.3d 883, 892 (Pa. Super. 2014) (a petitioner must specify the exact date he discovered the new evidence and have filed the PCRA petition "within sixty days thereof.").

The PCRA court was not required to hold an evidentiary hearing to ascertain whether Bryant acted with due diligence in filing this claim. A PCRA court can determine from review of the record that no hearing is necessary due to the absence of any genuine issue of material fact. *See Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011).

Bryant has not identified a factual dispute with respect to Stokes-Slusher's statement that would warrant an evidentiary hearing. He merely suggests that had a hearing been held, he could have established his due diligence in obtaining the statement. However, as outlined above, the underlying "fact" that he discovered would have already been known to him at the time Carter was murdered, so Bryant could not have been reasonably diligent in investigating David Slusher's involvement in the Carter shooting.

There is also no factual dispute as to Bryant's diligence because he never alleged the precise circumstances in which he obtained the witness statement and how he initially came to know of David Slusher's responsibility for Carter's murder. These facts would be within Bryant's own personal knowledge so, again, he would not need an evidentiary hearing to assert such information in his PCRA petition. Thus, the PCRA court did not err in denying the claim without an evidentiary hearing and the summary denial must stand.[8]

## C.

Bryant's third and final claim is that after-discovered evidence of police corruption deprived him of a fair trial.

The PCRA court did not err in denying this claim because it is untimely and inadequately developed. A petitioner must file his PCRA claim within one year from the date his judgment of sentence became final unless he can show that the factual basis of the claim could not have been discovered sooner with the exercise of due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

The civil suit that Bryant cites as evidence of Detective Jastrzembski's corruption was concluded on January 17, 2017, and he had 60 days from that point to invoke an exception to the PCRA's time-bar and file his claim. *See id*. Bryant's claim was not filed until over two years after the civil suit became

---

[8] Due to this claim's untimeliness and lack of merit, it is unnecessary for us to review the PCRA court's determination that the statement of Stokes-Slusher would be inadmissible hearsay.

final, and he did not state when he learned of the civil suit or why he could not have raised his claim sooner. Thus, the claim is time-barred. **See Davis**, 86 A.3d at 892 (a petitioner must specify the date he discovered the new evidence and he must file the PCRA claim "within sixty days thereof.").

Further, an officer's misconduct in an unrelated case does not automatically invalidate the results of all other cases the officer has ever been assigned to. **See e.g., Commonwealth v. Johnson**, 179 A.3d 1105, 1123 (Pa. Super. 2018); **Commonwealth v. Foreman**, 55 A.3d 532 (Pa. Super. 2012). A petitioner can only assert a meritorious claim for PCRA relief by demonstrating a link between an officer's misconduct and the petitioner's own case. **See Foreman**, 55 A.3d at 537-38.

Here, Bryant's allusion to Detective Jastrzembski's misconduct in the unrelated case of another criminal defendant does not alone entitle Bryant to relief. The second prong of a claim of after-discovered evidence requires him to show how the misconduct could be used for more than the impeachment of the detective's credibility. However, Bryant's claim is focused solely on impeachment, so the second prong is not satisfied. **See id**. at 537.

Similarly, but in terms of the fourth prong of an after-discovered evidence claim, Bryant has not shown that the detective's actions likely changed the outcome of his trial. He not drawn any nexus between his own case and the criminal charges filed against the officer in unrelated matters. **See id**. at 537-38. Bryant's failure to satisfy these two prongs were each fatal

- 16 -

to his claim. Thus, the PCRA court did not err in denying any of Bryant's three claims of after-discovered evidence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021